United States District Court
Southern District of Texas
**ENTERED**
December 13, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| APEX REI SERIES, LLC, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-22-4128 |
| | § | |
| GREAT LAKES INSURANCE SE, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**MEMORANDUM AND OPINION**

This is an insurance coverage dispute about whether damages from a leak in the roof of a residential property was a covered loss because it resulted from a storm or whether the leak was outside the policy coverage because it resulted from rot, wear and tear, and an accumulation of pine needles.  The defendant, Great Lakes Insurance SE, denied the plaintiff's insurance claim because it found that the leak had been caused by rot, wear and tear, and pine needles, which are uncovered causes of loss under the insurance policy.  The determinative issue presented by the defendant's motion for summary judgment is whether the plaintiff has raised a factual dispute material to determining whether the leak was instead caused by a storm, a covered cause of loss.  The court finds that summary judgment is appropriate because the plaintiff has failed to raise a factual dispute material to determining that the loss was outside policy coverage.

I.     **Background**

The plaintiff, Apex REI Series, LLC, is a real estate property management company operated by Rahim Meghani.  (Docket Entry No. 26-1 at 10).  Apex owned and leased to residential tenants a dwelling in Humble, Texas.  (*Id.* at 13; Docket Entry No. 16 at ¶ 6).  From January 1,

2020 to January 1, 2021, the defendant, Great Lakes Insurance SE, insured the property against "direct physical loss unless the loss is excluded or limited in this policy." (Docket Entry No. 24-1 at 61).

The policy's "exclusions" include damages caused "directly or indirectly" by "surface water," "'fungus,' wet rot, dry rot[,] and bacteria."[1] (Docket Entry No. 24-1 at 62). The policy's "limitations" include "[t]he interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless: (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice sand or dust enters." (*Id.* at 66). In other words, the policy did not cover damage from water leaking into the property through the roof unless the leak itself was caused by a "Covered Cause of Loss," that is, a "direct physical loss" such as a windstorm or hailstorm. (*Id.* at 61; Docket entry No. 25-1 at 8).

In early April 2020, tenants notified Mr. Meghani that water had been leaking into the home through the roof, damaging the interior of the home. (Docket Entry No. 26-1 at 35–36). Mr. Meghani filed a claim with Great Lakes, reporting a date of loss of April 6, 2020. (Docket Entry No. 25-2 at 1). Great Lakes assigned an adjuster, who inspected the property without going onto the roof. (Docket Entry No. 26-1 at 41). Based on the adjuster's findings that the damage to the interior of the home was caused by surface water in the backyard and mold growth—excluded causes of loss under the policy—Great Lakes denied the claim. (Docket Entry No. 25-2).

In June or July 2020, Mr. Meghani requested a second inspection of the property. (Docket Entry No. 26-1 at 59). Great Lakes, without being asked to by Mr. Meghani, opened a new claim with a June 30, 2020, date of loss. (*Id.* at 41–42, 47–48). Great Lakes then assigned a second

---

[1] The policy defines "fungus" as "any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi." (Docket Entry No. 24-1 at 70).

2

adjuster to reinspect the property.  (*Id.* at 51, 59–60).  The adjuster concluded that the roof leak had not been caused by a storm and that the roof had not been damaged by wind or hail.  (Docket Entry No. 25-4 at 2–3).

In October 2020, Great Lakes assigned a third adjuster to inspect the property. (Docket Entry No. 25-5 at 1).  The adjuster reported "rotted fascia" and "heavy rot to the roof decking." (*Id.* at 2).  The adjuster also found "heavy granule loss and loss of pliability of the shingles," and observed that the roof vents "appeared to be from the original construction of the home."  (*Id.*).

In December 2020, Great Lakes denied the June 30, 2020, claim, explaining that the leak had been caused by rot, wear and tear, and lack of maintenance—all excluded causes of loss under the policy.  (Docket Entry No. 25-6).

After receiving the denial letter, Mr. Meghani hired OnPoint Claim Recovery to evaluate the extent and cause of the property damage.  (Docket Entry No. 29-6; Docket Entry No. 29-10 at 4).  OnPoint inspected the property and assigned an adjuster, Ana Nguyen, to prepare a loss estimate and report.  (Docket Entry No. 29-6).  Ms. Nguyen concluded that the property damage had been primarily caused by "intense wind and hailstorm."  (Docket Entry No. 29-10 at 4).

In July 2021, Great Lakes hired an engineer to inspect the property.  The engineer concluded that the roof leak had not been caused by windstorm or hailstorm, but by "pine needles that [had] accumulated within the roof valley."  (Docket Entry No. 25-7 at 12).

In November 2022, Apex filed this action against Great Lakes in Texas state court.  (Docket Entry No. 1-1).  Great Lakes removed on the basis of diversity jurisdiction.  (Docket Entry No. 1 at 2).  Apex asserts claims for breach of contract, violations of the Texas Insurance Code, § 542.051 *et seq.*, and breach of the duty of good faith and fair dealing.  (Docket Entry No. 16).  Apex seeks

damages for "the loss of the benefits that should have been paid pursuant to the Policy." (*Id.* at ¶ 56).

Great Lakes has moved for summary judgment, (Docket Entry No. 23), and to exclude Ms. Nguyen's expert testimony, report, and estimate, (Docket Entry No. 27).  Apex has moved for leave to file a sur-reply to Great Lakes's motion for summary judgment, (Docket Entry No. 32), which the court has granted, (Docket Entry No. 33).

Based on the motions, responses, record, and applicable law, the motion for summary judgment is granted in full and the motion to exclude is granted in part.  The reasons are set out below.

## II.     The Legal Standards

### A.     The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the

burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted).  "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).  "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted).  The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted).  Of course, all reasonable inferences are drawn in the nonmovant's favor.  *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022).  But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

**B.**     **The Rule 702 Standard**

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

Rule 702 "charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)). Expert testimony must be both "relevant and reliable" to be admissible. *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003) (quoting *Pipitone*, 288 F.3d at 243–44); *Daubert*, 509 U.S. at 589 (stating that "under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable").

Witnesses may be qualified as experts if they possess specialized knowledge, skill, experience, training, or education. FED. R. EVID. 702. The Fifth Circuit has stated that an expert must have expertise in the general area in which he testifies, but need not have expertise in the specialized area directly pertinent to the issues in question. *United States v. Marler*, 614 F.2d 47, 50 (5th Cir. 1980). The court must determine whether the proposed expert's training or experience are sufficiently related to the issues and evidence before the court that the expert's testimony will assist the trier of fact. *Primrose Operating Co. v. Nat'l Am. Ins.*, 382 F.3d 546, 562–63 (5th Cir. 2004).

The court must determine relevance by asking whether the expert testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Daubert*, 509 U.S. at 591; *Pipitone*, 288 F.3d at 245. In making its reliability determination, the court should not decide the validity of the expert's conclusions, but instead

consider the soundness of the general principles or reasoning on which the expert relies and the propriety of the methodology that applies those principles to the facts of the case. *Daubert*, 509 U.S. at 594–95; *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997); *Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 600 (S.D. Tex. 2001).  The considerations apply to all types of expert testimony, whether based on "scientific, technical, or other specialized knowledge." FED. R. EVID. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–48 (1999); *Tucker*, 345 F.3d at 327.

Several factors guide a district court's inquiry into the reliability of expert testimony.  The reliability factors from *Daubert* include whether the expert's technique or theory can be or has been tested; whether it has been subjected to peer review and publication; whether it has a known or potential rate of error or standards and controls guiding its operation; and whether it has been generally accepted in the scientific community.  *Pipitone*, 288 F.3d at 244 (citing *Daubert*, 509 U.S. at 593).  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The test for reliability is flexible. The specific factors listed in *Daubert* and its progeny neither necessarily nor exclusively apply to all experts or in every case.  *Kumho Tire Co.*, 526 U.S. at 150.  The district court "has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 458–59 (5th Cir. 2012) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354 (5th Cir. 2007)).  The trial court's role as gatekeeper is not intended to replace the adversary system; "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction

7

on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *Pipitone*, 288 F.3d at 250. "[A] trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Pipitone*, 288 F.3d at 250.

Admissibility of expert testimony is an issue for the trial judge to resolve under Federal Rule of Evidence 104(a). *Daubert*, 509 U.S. at 592–93; *Brumley*, 200 F.R.D. at 601. The party offering the testimony must prove by a preponderance of the evidence that the expert's opinion is relevant and reliable. *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Brumley*, 200 F.R.D. at 601. "A trial court's ruling regarding admissibility of expert testimony is protected by an ambit of discretion and must be sustained unless manifestly erroneous." *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1317 (5th Cir. 1995).

## III.    Analysis

### A.    The Breach of Contract Claim

"Under Texas law, an insured bears the burden of proving that a loss is covered under the terms of an insurance policy. Once the insurer has established that an exclusion applies, the insured has the burden of proving the application of an exception to the exclusion." *Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004).

Great Lakes first argues that Apex has produced no evidence that the property was damaged by a covered loss during the policy period. (Docket Entry No. 23 at 12). Great Lakes relies on the deposition testimony of Mr. Meghani as Apex's corporate representative. Great Lakes points to Mr. Meghani's testimony that he did not recall a weather event that occurred in April 2020 or June 2020, and that Apex never had anyone determine what caused the leak at issue. (*Id.* at 13).

Great Lakes argues that Mr. Meghani's testimony that there was a roof leak that caused damage to the interior of the property during the policy period is legally insufficient.  (*Id.*).

In response, Apex argues that it is not required to "determine the exact date of loss." (Docket Entry No. 29 at 5).  Apex argues that it is enough that "every date of loss assigned by Great Lakes or otherwise linked to this claim for damage to the roof and Property interior is within the policy period."  (*Id.*).  Apex relies on Mr. Meghani's deposition testimony that he had filed the claim promptly after the tenants reported the leak, and that the property did not have any roof or water issues before April 2020.  (*Id.* at 5–6).  Apex also relies on the report, estimate, and affidavit of its expert, Ms. Nguyen.  Ms. Nguyen's affidavit states, in relevant part:

> Based on my skills, knowledge, training, and experience in handling all types of losses as an adjuster, as well as my evaluation of Property photos and scope notes taken by an OnPoint Claim Recovery field adjuster on the Property, my conversations with Mr. Meghani who has knowledge of the Property's condition before and after the storm and the history of this claim, I concluded that the damage observed and noted in my estimate was due to a wind and/or hail storm that occurred during the policy period.

(Docket Entry No. 29-6 at ¶ 7).  Ms. Nguyen's report concludes that "intense wind and hailstorm" was the "primary cause" of the property damage.  (Docket Entry No. 29-10 at 4).  Ms. Nguyen found that "[b]ased on the weather report from HailTrace[,] there was significant weather with winds that reached 60 mph and hail up to 1.25 inches that would cause significant damage to property around the time the homeowner noticed damages and leaks."  (*Id.* at 6).  Ms. Nguyen also found that "hailstones caused significant dents and punctures in the roof that match.  Several shingles were ripped off, exposing the underlying wood.  There [were] golf size indentations on the soft metals concurrent to the hail reported."  (*Id.*).

Great Lakes has filed a motion to exclude Ms. Nguyen's report, estimate, and affidavit under Federal Rule of Civil Procedure 702.  (Docket Entry No. 27).  Great Lakes argues that Ms.

Nguyen's opinion that the damage was caused by a windstorm or hailstorm during the policy period is conclusory and contradicts Mr. Meghani's testimony.  (*Id.* at 6).

The court agrees that Ms. Nguyen's causation opinion is impermissibly conclusory.  Ms. Nguyen states, without elaboration, that her causation opinion is based on her "skills, knowledge, training, and experience" and her "evaluation of Property photos and scope notes."  (Docket Entry No. 29-6 at ¶ 7).  She does not explain what specific observations led her to conclude that the damage was caused by wind or hail.  She refers to a "weather report from HailTrace," but the report is not in the record and Ms. Nguyen does not reproduce the report's data, or even provide any specific dates of windstorms or hailstorms.  (Docket Entry No. 29-10 at 6).  Ms. Nguyen's causation opinion is "connected to existing data only by [her] *ipse dixit*."  *Joiner*, 522 U.S. at 146. The causation opinions in Ms. Nguyen's report, estimate, and affidavit are therefore stricken from the summary judgment record.

Without Ms. Nguyen's causation opinion, Apex has only the deposition testimony of its corporate representative to support its position on causation.  Mr. Meghani testified in relevant part that the roof had not been leaking before April 2020, when the tenants reported the problem. (Docket Entry No. 26-1 at 37–38).  This is insufficient to establish that the damage was caused by a covered loss during the policy period.  Water damage from a roof leak is a covered loss under the policy if the roof leak was caused by a "Covered Cause of Loss," such as a windstorm or hailstorm.  (Docket Entry No. 24-1 at 66; Docket Entry No. 25-1 at 8).  When the leak began may be important evidence of what caused the roof damage that resulted in leaking, and when that cause occurred.  Apart from Ms. Nguyen's inadmissible opinion, all of the evidence on that question supports the conclusion that the cause was not covered.  Great Lakes's adjuster concluded that the roof leak was caused by "heavy rot to the roof decking around the HVAC Vent."  (Docket Entry

No. 25-6 at 3; Docket Entry No. 25-5 at 2).  The adjuster also found that "wear and tear" and improper maintenance and repairs contributed to the damage.  (Docket Entry No. 25-6 at 4–5).  Another Great Lakes adjuster found "no wind or hail damage" to the roof.  (Docket Entry No. 25-4 at 2).  The engineer hired by Great Lakes also concluded that neither wind nor hail had damaged the roof.  (Docket Entry No. 25-7 at 4, 12).  Instead, the engineer found that the roof leak was "due to pine needles that accumulated within the roof valley."  (*Id.* at 12).  Apex does not dispute that these causes are not covered losses under the policy.

For these reasons, Apex has not raised a factual dispute material to determining whether the property was damaged by a covered loss during the policy period.  Summary judgment is appropriate on Apex's breach of contract claim.

## B.     The Extra-Contractual Claims

Great Lakes argues that Apex's extra-contractual claims fail because Apex's breach of contract claim fails and Apex has not asserted an injury independent of its right to policy benefits.  (Docket Entry No. 23 at 22).  Apex does not contest that its only injury is a loss of policy benefits.  Instead, Apex argues that its extra-contractual claims survive summary judgment because it "has provided sufficient evidence showing its damages were caused by a storm within the policy period."  (Docket Entry No. 29 at 12).

An insurance plaintiff can maintain extra-contractual claims separate from a breach of the underlying insurance policy only if the alleged statutory violations caused "an injury independent of the insured's right to recover policy benefits."  *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 499 (Tex. 2018).  As explained, Apex's breach of contract claim fails as a matter of law, and Apex has not alleged any injury independent of the denial of policy benefits.  Summary judgment is appropriate on Apex's extra-contractual claims.

**IV.    Conclusion**

Great Lakes's motion for summary judgment is granted.  (Docket Entry No. 23).  Great Lakes's motion to exclude is granted as to Ana Nguyen's causation opinions only.  (Docket Entry No. 27).

SIGNED on December 13, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge